## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **GRAINGER RICKENBAKER,** *et al.*, *individually and on behalf of all others similarly situated* | : : : : : | |
| | : | **CIVIL ACTION** |
| **Plaintiffs,** | : : : | **NO. 20-3353** |
| **v.** | : : : | |
| **DREXEL UNIVERSITY,** | : : : | |
| **Defendant.** | : : | |

**MEMORANDUM**

**TUCKER, J.**                                                                             **March 30, 2022**

Presently before the Court are Defendant's Motion to Dismiss the Amended Complaint (ECF No. 17), Plaintiffs' Memorandum in Opposition (ECF No. 21), Defendant's Reply in Support of its Motion to Dismiss (ECF No. 25), Defendant's Notices of Supplemental Authorities (ECF Nos. 26, 27, 29, and 30), Plaintiff's Notice of Supplemental Authority (ECF No. 31) and Defendant's Response in Opposition to Plaintiff's Notice of Supplemental Authority (ECF No. 32). Plaintiff Grainger Rickenbaker is an individual, and a resident and citizen of the state of South Carolina. Plaintiff Elizabeth Mekler is an individual, and resident and citizen of the Commonwealth of Pennsylvania. Defendant Drexel University ("Drexel") is an institution of higher education located in Philadelphia, Pennsylvania. The Plaintiffs in this class action raise their claims against Drexel for: (1) violation of Pennsylvania's Uniform Trade Practices and Consumer Protection Law (UTPCPL); (2) breach of contract; and (3) unjust enrichment, as a result of Drexel transitioning to online education for the Spring 2020 quarter without reducing tuition and fees.

Defendant argues that Plaintiffs were adequately noticed of its Spring 2020 term tuition and fees policy, that they presented clear and accurate information to Plaintiffs, and yet Plaintiffs still chose to avail themselves of Spring 2020 term programming and earn credits towards the completion of their degrees, so no violation, breach, or unjust enrichment took place. This Court agrees that Plaintiffs claims for damages as related to tuition are unfounded, and accordingly, Defendant's Motion to Dismiss the Amended Complaint (ECF No. 21) is **GRANTED** as to all three claims regarding Plaintiffs' tuition, and **DENIED** insofar as the claims relate to Plaintiffs' fees for the Spring 2020 term.

## I.       FACTUAL AND PROCEDURAL BACKGROUND

In March of 2020, the COVID-19 pandemic sent the world into a tailspin. The lockdown and social distancing requirements forced institutions for higher education to respond accordingly. Defendant Drexel was prompted to move online to a remote learning environment in order to comply with Pennsylvania Governor Tom Wolf's orders requiring campuses to close. Def. Mot. to Dismiss 1.

Unlike many universities, Drexel operates on a quarter system. Am. Compl. 4. Because of this, when the pandemic struck, students were nearing the end of the Winter Term (which was scheduled to end on March, 21, 2020) and heading into Spring Break. Am. Compl. 4. Throughout March 2020, Drexel moved classes to a remote setting for the Spring Term, which was scheduled to begin on March 30, 2020. *Id.* On March 16, 2020, the University emailed all students to inform them that the start of the Spring term would be delayed by a week to April 6, 2020, and that the entire term would be taught online through remote education methods. *Id.* Drexel provided updated information about grading, exams and what classes might look like,

including that there would be a combination of live (synchronous) and recorded (asynchronous) ones, as faculty made use of web, video and teleconferencing tools. Def. Mot. to Dismiss 2.

Drexel also explained that normal fees and tuition would apply for the Spring Term although the classes would be provided remotely. *Id.* On the Drexel Central website (a link to which appears in the March 25 announcement), Drexel posted the tuition and fees for the Spring 2020 quarter. Def. Mot. to Dismiss 10. The regular on-campus undergraduate tuition rate at Drexel University for full time students during the 2019-2020 academic year was $17,382, amounting to anywhere between $1,448.50 and $1,158.80 per credit hour depending upon the number of hours for which the student registers. Am. Compl. 11. The regular on-campus undergraduate tuition rate for part time students was $1,173 per credit hour. *Id.* The Drexel University Online tuition rate is $530 per credit, which is roughly 55% less than on-campus students. *Id.* On-campus undergraduate students were required to pay a per-term University Fee of $790. Students in the Drexel University Online program are not charged a University Fee. Bills for the Spring term were sent prior to the March 16th announcement, by which time students had already registered for classes, and some students had already paid their Spring term tuition, including Plaintiff Mekler, who paid Spring 2020 tuition on March 11, 2020. Am. Compl. 4-5.

In a March 17, 2020 YouTube video, the President of Drexel University John Fry stated:

> We know we can do this and do it well, because Drexel began online education in 1996 and we have become leaders in the field. Drexel University Online already provides high quality, impactful, and engaging remote education for more than 7,000 online students. Now we're just taking it up a notch. I can assure you that Drexel students will find it just as rewarding and challenging as any course taught in a classroom.

Def. Mot. to Dismiss 27; Am. Compl. 5. https://www.youtube.com/watch?v=8wo6rIdPXB4.

And on March 25, 2020, Drexel sent students a message stating:

> "There will be no charges levied for on-campus housing or meal plans for students working from home or in off-campus residences. However, just as with online courses offered through Drexel University Online, normal tuition and fees will apply for the [S]pring 2020 quarter – less any institutional scholarships and grants, or federal and state aid, which will be credited on student bills. We are working diligently over the extended [S]pring break to develop engaging teaching and learning experiences to enable students to continue their studies. Fees, in turn, support the creation of a rich online learning experience, as well as other forms of digital interaction currently under development."

Am. Compl. 6. https://drexel.edu/news/archive/2020/march/campus-update-rich-offering-student-experiences.

Despite having paid full Drexel University tuition rather than Drexel University Online tuition, being on notice that Spring Term classes would be provided in a remote environment and, having been able to participate in those courses for a full week before making a final decision, Plaintiffs did not withdraw and obtain a refund pursuant to Drexel's refund policy. Def. Mot. to Dismiss 12. Drexel's publicly posted refund policy entitled Plaintiffs to a 100% refund if they withdrew through the first week of classes. Def. Mot. to Dismiss 2. Through the fourth calendar week of classes, there was a declining schedule of discounts available, should students choose to withdraw. *Id.* at 12. Plaintiffs and members of the proposed Class chose not to transfer or withdraw, and instead continued their education at Drexel during the Spring 2020 quarter. Am. Compl. 6.

However, upon starting the term, Plaintiffs felt that "many of Defendant's on-campus professors were woefully technologically illiterate and ill-prepared to teach their materials in a remote fashion" and that "most of these professors had never been evaluated, trained, or certified in the intricacies of teaching online." Am. Compl. 13. Plaintiffs also found Defendant's statement that "[b]efore the first day is out, professors and their students will have gathered

4

online for more than 750 course sessions previously scheduled in traditional classrooms and labs.
By week's end, they will be followed by several thousand online sessions, amounting to
approximately 3,250 instructional meetings" was misleading, as many courses never met or
gathered at all and consisted of pre-recorded lecture videos or self-study homework assignments.
Am. Compl. 15. Plaintiffs also allege that professors failed to conduct regular office hours
despite the promise in Drexel's March 25, 2020 message. Am. Compl. 17.

Plaintiffs argue that by choosing to remain enrolled and/or paying tuition, that created a
new contract

> "which provided that Plaintiffs and other members of the Class would pay tuition
> for or on behalf of students and, in exchange, Defendant would provide online
> remote instruction pursuant to the terms and policies set forth in Defendant's
> emails, together with those promises made by Defendant in its other publications,
> bulletins, and circulars, including specifically, its registration portal."

Am. Compl. 17.

Plaintiffs believe that Defendants breached this new contract, and they retained tuition
money paid by Plaintiffs and other members of the Class, without providing them the full benefit
of their bargain. *Id.* As an alternative to their UTPCL claim, Plaintiffs also raise a third cause of
action for unjust enrichment to the extent that the Court determines a contract does not exist or
apply to the second cause of action. Am. Compl. 18-19. Plaintiffs allege they were charged and
paid significantly more than the advertised price, causing them to lose money. Because of
Defendant's conduct, Plaintiffs and members of the Class argue they are entitled to receive
compensation for their damages, treble damages and reasonable attorneys' fees, pre and post
judgment interest on any amounts awarded, and other such relief as may be just and proper.

## II.     LEGAL STANDARDS

The purpose of a Rule 12(b)(6) Motion to Dismiss is to test the sufficiency of pleadings. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The touchstone of that pleading standard is plausibility. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotations omitted). Facial plausibility requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. A plaintiff will not prevail if he provides only "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Instead, the plaintiff must detail "enough facts to raise a reasonable expectation that discovery will reveal evidence of 'each necessary element of the claims alleged in the complaint.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556 (2007)).

Applying the *Iqbal* and *Twombly* principles, the Third Circuit decided *Santiago v. Warminster Township*, 629 F.3d 121 (3d Cir. 2010), in which it set forth a three-part test that district courts must apply when evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss.  A court must: (1) identify the elements of the claim; (2) review the complaint to strike conclusory allegations; and (3) look at the well-pleaded components of the complaint and evaluate "whether all the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  If the complaint fails to do so, the motion for dismissal will be granted.

## III.   DISCUSSION

All of Plaintiffs' claims center around their dissatisfaction with the quality of their Spring 2020 term education, and they challenge that quality of education and the academic judgments about delivery of remote instruction during the pandemic. Consistent with the principles of academic freedom, Pennsylvania courts do not permit claims that seek to challenge the quality of a school's education. Courts in Pennsylvania refuse to "recognize a general cause of action for educational malpractice, whether framed in terms of tort or breach of contract, where the allegation is simply that the educational institution failed to provide a quality education." *Cavaliere v. Duff's Bus. Inst.*, 605 A.2d 397, 403 (Pa. Super. Ct. 1992); *see also Aubrey v. School District of Philadelphia*, 437 A.2d 1306, 1307 (Pa. Commw. Ct. 1981).

Pennsylvania courts and courts in the Third Circuit applying Pennsylvania law have consistently followed this rule. In *Swartley v. Hoffner*, the Superior Court rejected a claim based on a theory of educational malpractice and emphasized that "it is not the place of this Court to second-guess academic decisions and judgments made in colleges and universities of this Commonwealth. We are not now and will never be experts in each and every academic field open to scholarly pursuit. . . . As a result, our Court abides by a general policy of nonintervention in purely academic matters." 734 A.2d 915, 921 (1999); *accord Vurimindi v. Fuqua Sch. Of Business*, 435 F. App'x. 129, 133 (3d Cir. 2011) ("A plaintiff must do more than allege that the school did not provide a good or quality education." (citations omitted)); *Miller v. Jefferson Univ. Hosp.*, 908 F. Supp. 2d 639, 655-56 (E.D. Pa. 2012) (concluding that "the Plaintiff's claims simply 'invite[ ] the court to enter into precisely the kind of generalized review of the entire course of instruction that so many other courts have wisely refrained from doing'" (citation omitted)); *Manning v. Temple Univ.*, No. 03-4012, 2004 WL 3019230, at *12 (E.D. Pa.

Dec. 30, 2004) ("Pennsylvania refuses 'to recognize a general cause of action . . . . where the allegation is simply that the educational institution failed to provide a quality education.'" (citation omitted)), aff'd, 157 F. App'x. 509 (3d Cir. 2005).

Drexel's statements leading up to the Spring 2020 term that it had "an experienced and resourceful community committed to delivering high-quality courses and exams with academic integrity and rigor" were too general to support a cause of action for education quality. And Drexel citing its experience in providing online education in the past is no different than the alleged promise of a "quality education" in *Cavaliere*. Plaintiffs' complaints about the quality of teaching provided by Drexel's professors in a remote environment, their availability for office hours and whether their classes were synchronistic or asynchronistic are challenges to Drexel's "academic decisions and judgments," and as such, cannot plausibly state a claim for relief under UTPCPL, for breach of contract, or for unjust enrichment. *Swartley*, 734 A.2d at 921.

### A.  Unfair Trade Practices – 73 P.S. §§201-1 – 201-9.2

Plaintiffs allege that Drexel misrepresented what tuition they would be charging students for the remote Spring semester by stating on March 25, 2020 that "just as with online courses offered through Drexel University Online, normal tuition and fees will apply for the [S]pring 2020 quarter." Plaintiff believes this statement was unlawfully false and misleading under the UTPCPL, making Plaintiffs believe tuition for in-person students would be reduced to the Drexel University Online rate. To state a claim under the UTPCPL, the Plaintiffs must allege that Drexel committed one of the statutorily enumerated "unfair or deceptive" practices. Plaintiffs allege three practices: (1) that Drexel made "false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions" *See* 73 Pa. Stat. Ann. § 201-2(4)(xi); (2) that Drexel "[p]ass[ed] off goods or services as those of another." 73 Pa. Stat. Ann. § 201-

2(4)(i); and (3) that Drexel otherwise "[e]ngag[ed] in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. Stat. Ann. § 201-2(4)(xxi).

Whatever the specific provision relied upon, to state a claim under the UTPCPL, Plaintiffs must allege that Drexel made a false or misleading statement of fact, concealed information, or engaged in deceptive conduct. *Meeks-Owens v. Indymac Bank, F.S.B.*, 557 F. Supp. 2d 566, 579 (M.D. Pa. 2008); *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009). Plaintiff must "allege facts showing a 'deceptive act,'" meaning "'conduct that is likely to deceive a consumer acting reasonably under similar circumstances.'" *Id.* (quoting Black's Law Dictionary 455 (8th ed. 2004)); *see also Corsale v. Sperian Energy Corp.*, 374 F. Supp. 3d 445, 459 (W.D. Pa. 2019) (deceptive act requires "conduct that is likely to deceive a consumer acting reasonably under similar circumstances"), aff'd, No. 19-3567, 2020 WL 3428940 (3d Cir. June 23, 2020).

Additionally, "to bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 854 A.2d 425, 438 (Pa. 2004); *Huu Nam Tran v. Metro. Life Ins. Co.*, 408 F.3d 130, 140 (3d Cir. 2005); *see also Seldon*, 647 F. Supp. 2d at 466 ("[A] plaintiff bringing an action under the UTPCPL must prove . . . reliance and causation with respect to all subsections of the UTPCPL,' upon which plaintiff brings a claim." (internal citations omitted); *Kern v. Lehigh Valley Hosp., Inc.*, 108 A.3d 1281, 1289 (Pa. Super. 2015). Generalized optimism and laudatory language are not actionable under the UTPCPL. *See Corsale v. Sperian Energy Corp.*, 412 F. Supp. 3d 556, 563 (W.D. Pa. 2019) ("[P]uffery—'exaggeration or overstatement expressed in broad, vague,

and commendatory language'—is not actionable under the UTPCPL." (some quotation marks

omitted) (quoting *Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 416 (E.D. Pa.

2016))).

Plaintiffs assert that Drexel made statements leading them to believe either that they

would be charged the tuition for Drexel Online or that they would in fact be enrolled in Drexel

Online, rather than Drexel University, and that Drexel misled them about the quality of education

they would receive. However, Plaintiffs fail to allege that they or any other proposed class

members chose not to transfer or withdraw because they justifiably relied on Drexel's alleged

misrepresentations. Justifiable reliance and causation are required elements of a UTPCPL claim

in Pennsylvania. *See Yocca*, 854 A.2d at 439 and *Weinberg*, 777 A.2d at 444–46. Plaintiffs could

not reasonably believe that they had been enrolled in Drexel Online, rather than Drexel

University. They completed Financial Responsibility Agreements in which they acknowledged

that they had registered for classes at "Drexel University" and agreed to pay "tuition, fees and

any other balances pursuant to the Student Financial Obligations and Tuition Repayment

Agreement" to Drexel University, not Drexel University Online. Baughman Decl., Exs. A, B.

And had they actually transferred to Drexel University Online, many of the students' degree

programs would be unavailable, as Drexel University Online only has 16 degree options

compared to the on-campus undergraduate program's 80 degree offerings. Necessarily,

Plaintiffs' claims for UTPCPL violations are dismissed as to tuition for the Spring 2020 term.

### B.  Breach of Contract

Pennsylvania courts have held that "the relationship between a private educational

institution and an enrolled student is contractual in nature." *Swartley*, 734 A.2d at 919. To state a

breach of contract claim under Pennsylvania law, Plaintiffs must allege: "1) the existence of a

contract and its terms; 2) a breach of the duty imposed by the contract; and 3) damages that resulted." *Bradshaw v. Pa. State Univ.*, No. 10-4839, 2011 WL 1288681, at *2 (E.D. Pa. Apr. 5, 2011) (citing *CoreStates Bank v. Cutillo,* 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). In Pennsylvania, "[t]he contract between a private institution and a student is comprised of the written guidelines, policies, and procedures as contained in the written materials distributed to the student over the course of their enrollment in the institution." *Id.* A plaintiff can allege a breach of contract action against a private university only when "the institution ignores or violates portions of the written contract." *Id.* Further, "[v]ague or aspirational statements cannot form the basis for an enforceable agreement where there is no indication that the parties intended to enter into a bargain, and school publications are not generally a valid source of contract." *Vurimindi v. Fuqua Sch. of Bus.*, No. 10-234, 2010 WL 3419568, at *6 (E.D. Pa. Aug. 25, 2010), aff'd, 435 F. App'x 129.

Plaintiffs have not identified any contractual promise or obligation that Drexel breached with regards to Spring 2020 term tuition. Under Pennsylvania law, the "contract between a private institution and a student . . . is comprised solely of the written materials provided to the students." *Swartley*, 734 A.2d at 919. Plaintiffs have not pointed to any written guidelines, policies, and procedures that Drexel violated. Neither an email nor a YouTube video is a contract. Drexel's published policies and procedures plainly stated what tuition was being charged and what Plaintiffs' options were for a refund, and both Plaintiffs, as well as all prospective class members, executed contracts that agreed to pay that tuition and acknowledged Drexel's refund policy. Plaintiffs cannot override those specific published policies with email messages and videos that in fact make clear that normal tuition and fees would be charged.

*Vurimindi*, 2010 WL 3419568 at *6; *see also Vurimindi*, 435 Fed. App'x 129 at 133[1] (a generalized statement about providing "the highest quality education" is not the kind of "specific and definite term[]" which can constitute an actionable promise or representation under contract law). Accordingly, Plaintiffs' breach of contract claims for Spring 2020 tuition must be dismissed.

### C.  Unjust Enrichment

Plaintiffs raise unjust enrichment claims based on their belief that they did not receive an adequate education for the tuition and fees that they paid, because of a reduction in quality due to Drexel's Covid-19 compliant online education framework. To state a claim for unjust enrichment under Pennsylvania law, a plaintiff must allege: "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Walter v. Magee Womens Hosp. of UPMC Health Sys.*, 876 A.2d 400, 407 (Pa. Super. Ct. 2005). "The most important factor to be considered in applying the doctrine is whether the enrichment of the defendant is unjust." *Schenck v. K.E. David, Ltd*, 666 A.2d 327, 328 (Pa. Super. Ct. 1995).

As for Plaintiffs' unjust enrichment tuition claim, Plaintiffs do not allege that Drexel "failed to hold the classes for which [they] paid [their] tuition or that [they] [were] prevented from attending such classes." *Bradshaw*, 2011 WL 1288681, at *2 (dismissing an unjust enrichment claim under Pennsylvania law); *David v. Neumann Univ.*, 177 F. Supp. 3d 920, 927 (E.D. Pa. 2016) (dismissing a quantum meruit claim because "Plaintiff fails to allege how it would be unconscionable for the University to retain the tuition paid for classes that she

---

[1] This is a separate opinion from the first *Vurimindi* in this string cite.

12

attended."). Because Plaintiffs attended their courses and received credit for the courses they completed, there can be no unjust enrichment. Further, there was a written contract between each Plaintiff and Drexel for which there was a corresponding exchange of value, undercutting Plaintiffs' unjust enrichment claims. *See Villoresi v. Femminella*, 856 A.2d 78, 84 (Pa. Super. Ct. 2004). Although Plaintiffs allege that Drexel failed to appropriately utilize the fees and tuition it received considering their decision not to reduce the cost of attendance, Plaintiffs still clearly received a benefit from the tuition they paid in the form of academic credits going towards their degrees.

Drexel contends that because the tuition and fees were used to fulfill their charitable mission by continuing to provide an education and student services remotely in the middle of a pandemic, there is no basis for an unjust enrichment claim. This Court partially agrees. Plaintiffs received the benefit of academic credits going towards their degree as consideration for their tuition payments, and had the opportunity to withdraw if they did not feel they were receiving adequate education for the value of their tuition dollars, thus, their unjust enrichment claim is dismissed as to tuition. However, Plaintiffs did not receive commensurate benefits for their school fees, given what is normally available for that amount. Thus, Plaintiffs' unjust enrichment for university fees claim still stands.

## IV.    CONCULSION

Given the Plaintiffs' failure to raise a claim upon which relief can be granted with regards to Drexel's tuition for the Spring 2020 term, Defendant's Motion to Dismiss is granted as to Plaintiffs' three claims for tuition and denied as to the claims for fees.

An appropriate Order follows.